The court will proceed to the final case, Miller v. The United States. Mr. Hasbury. May it please the court, counsel. Attorney Derek Hasbury here, appointed attorney for the appellant in this matter, Mr. Brian Miller. Your Honor, there is essentially three issues here in this 2255 appeal on the denial of the petition. First is, raised in the government's brief, was whether or not the government, by failing to raise the issue of whether the Sixth Amendment attaches at pre-indictment proceedings, is that argument waived here in court on appeal? The second issue is whether, if not waived, the court finds, or is the defendant afforded, a Sixth Amendment attachment of effective assistance of counsel during pre-indictment plea negotiations? And finally, whether or not, if the Sixth Amendment right does attach, prior to formal indictment proceedings or similar court process, whether the appellant's trial court counsel was ineffective in this instance regarding his decision to reject the plea? As it relates to the first issue of waiver, I would submit to the court, and even actually cite the government's cases of Horton v. United States and Bailey v. International and shipholders, that the general proposition of rule in this court is, those arguments not made at hearing are waived later on appeal. That includes when you look at, in this case, it was not raised in the response to the 2255 petition, and it was not raised during hearing before Honorable Judge Shadid. Now the court certainly is not cuffed, absolutely, to accept or require that that argument be waived. In certain issues of law, this court can ignore that and proceed forward. But I think the general rule, again, for that exception, would be that the parties are not unduly prejudiced, and that includes the court or either litigant, and that the record was fully developed in a way that wouldn't prejudice the parties. Now why I believe it's waived in this case on that argument is what they're taking issue with is the nature and the stage and the criminal process in which this negotiation occurred. Now we don't know, because it wasn't brought up and the opportunity wasn't given to petitioner, at that hearing, whether or not the government, at the time of the original trial, had filed the information. Whether or not he was holding it and hadn't e-filed it. Whether or not he gave it to the clerk, and then the clerk returned it. These are facts that would have had been made in the record if we had known at the time that the government was going to make this challenge. I think it's waived. I think we can't go back and recreate those facts to determine the exact nature of the proceeding, because this occurred in court. This occurred with the accused, my client. It occurred in a criminal proceeding with the accuser, the government, at the opposing counsel table before Honorable Judge Shadid. That sounds like a criminal process to me. And to come now and challenge and say, well, it's not waived, and that we can attack that proceeding without being able to develop those and flesh out those facts, I think is fundamentally unfair. Can we go? Forgive me. Can we? I'd like to move into something a little different, and that is that the district court found that Attorney Brown provided Mr. Miller with enough information that he was aware of the situation he faced. Do you have any basis to challenge that credibility determination? And if you don't, doesn't that invalidate your argument that Mr. Miller was not informed of the potential sentence? Your Honor, I think as it relates to the agreement that was rejected at the time, that his understanding that it was a 10-year maximum, and that was on the negotiated plea, I think, that would have been done by a C agreement at the time before Judge Shadid. His counsel advised him to not accept the plea and to go to bench trial, which then resulted with the criminal complaint being dismissed. I think Judge Shadid correctly admonished him at that point at a future date that his sentencing range now has doubled to tripled as a result of I would submit the bad advice of his client. But I don't believe Judge Shadid gave him admonishments at the time of the dismissed criminal complaint because it wasn't before the court, then the government withdrew it because he refused to take the plea at the advice of his client, or his attorney, excuse me. Well, what evidence, if any, is there that the government was even considering attempt charges at the time that Brown advised Miller as to the plea option? In fact, didn't Brown inform the government that the plea denial was based on his interpretation of the definitions in the statute? And if the government could contest that understanding, that then Miller would be open to reconsidering the plea. If the government was planning to include attempt charges at that time, why wouldn't the government mention that at that point or in the plea offer itself? As it would impact, you know, the relevance of the legal argument here. Sure. I don't know that the record as it relates, and here's the problem we run into on the original rejection of the plea offer, is that there's not a real thorough record of that incident because I think essentially it was set for plea. Judge Shadid came out in the parties when they indicated there wasn't a plea or excuse, so we're relying primarily upon the testimony of Mr. Miller and Mr. Brown. As it relates to what you just stated regarding the advice, I think for any competent criminal attorney, because essentially what we're looking at is the reasonable standard and practice, whether they're deficiencies in his representation by Mr. Brown, and that any time you meet all the elements of a crime, however you don't meet the actual commission or completion of it, any co-ed crime such as attempt should always be on the consideration. I don't think that the defendant has to necessarily rely upon, if the state doesn't mention it or bring it, that when you reject their plea and they indicate at the time to the defense attorney, we'll bring more serious charges if you don't accept this, that he reasonably relied on his attorney in going forward. The difficulty that I have is concluding that it's just altogether unreasonable advice. It may not have been a sound decision to go to trial, but that it's just beyond the pale in light of the Fifth Circuit's decision in Steen. Because you do have, at the time this decision's made, as I understand the facts, you have the still images. It's pre-video recovery as a result of the Secret Service's search of the phone. And so it may have been a bit of a high-risk proposition, but you did have one circuit court in a still image context holding that the lascivious exhibition requirement wasn't satisfied. Yes, Your Honor, and I think, and I could be mistaken, but I believe even in Steen, intent may be an issue as it relates to the defendant's actions. And I think what, sorry, Your Honor, as it relates to defendant's actions, and what we have to remember here is the backdrop leading up to this particular rejection of the plea offer. And that was over this protracted period of almost a year, six months, which involved negotiations between the government and Mr. Brown, that my client had done proffers, had done polygraphs. The information that dealt with the production and the videos were known to Mr. Brown because he participated in the proffers in which they were made. So in that, intent I don't think was ever a question, because why do we know it wasn't a question? Because the intent to create lascivious content and the fact it was used for sexual gratification, in fact, my client acknowledged that he masturbated to the videos. that it can sway the court to take what would normally not be a lascivious interpretation and say it is. The other things I would point out to the court that I think relate to the Strickland two-prong test as it relates to his failure in performances, again, he didn't, and I think any reasonable defense attorney would realize that inchoate attempt crimes are certainly something that can be filed and you don't have to rely on the state to threaten them to know that's something you should advise your client. Two, it was very little advice given regarding production. It was simple possession of child pornography, which at the time of the hearing, he didn't do a simple sentencing guideline cross-reference, which he knew my client produced them. He knew it because he was in the proffer and he created the video. So when you come to the hearing, there's this great surprise that suddenly he was advised two years on his guidelines, now jumped to 10 because Mr. Brown failed to do a simple search on the cross-reference to production that we all agreed that he created by drilling the hole in the wall and video recording. You fast forward even further, this continued throughout the trial and not considering the overwhelming body of case law, proceeded to go to trial, which forfeited his ability to accept responsibility. Now in the grand scheme of things, that is less of a major issue because ultimately the judge went well below the guidelines. But in effect though, you have the prejudice, you have the ineffective assistance as it relates to pleas. You have, I think the government would have offered it when they were set there for a plea, which is one of the factors that the court has to consider. And two, I think the judge would have accepted it, which we have to prove on a potential offered plea where there's ineffective counsel, because the 10 years was the maximum he could receive under that original charge. We'd have to basically assume that the judge would have said, I reject it because it's not, it's too much, which I don't think would have been the case because he would have been receiving the maximum 10 year. Thank you. Thank you, Mr. Asbury. Mr. Walters. Good morning and may it please the court. Greg Walters on behalf of the United States. As counsel noted, we raised two issues in our brief. The first being whether the Sixth Amendment right attached to these pre-indictment negotiations and the second going to the merits of the decision by Judge Shadid. Regarding the first issue, we did front in our opening brief that this wasn't raised below. And I find it interesting that counsel now argues that we waived it when we fronted this and comes back and reply without enforcing a potential waiver. So in essence, it's a waiver of any waiver by the government. And I think what's unique in this sense regarding the Sixth Amendment, this isn't where in other contexts this court has found the government has waived a defense such as procedural default. This goes to the absolute foundation of the constitutional claim that he has raised before the district court and now on appeal. And we have nearly 50 years of precedent where the Supreme Court has never extended the right to counsel to pre-formal judicial proceedings. You know here, forgive me, but here the government prior to any judicial process identified the specific charges, exchanged discovery, confronted Miller with a polygraph test, and required acceptance of the plea deal at the very first judicial appearance or it would seek an indictment on other charges that were far more serious. Would the government be able to routinely engage in an end run around the right to counsel if we read the Sixth Amendment as denying the right to counsel at that stage? You know, with all its hallmarks of an adversary proceeding. Your Honor, I think to answer your question pointedly, no. The government has no interest in circumventing the counsel as exhibited by the proceedings or the process that took place here involving defense counsel right away. I think though the distinction, and we make no bones about it, this is a critical event. The negotiation of a plea, but that's a distinct question from when the right attaches. And the Supreme Court made that clear. Justice Breyer writing in Rothgary where he took Gillespie County to task for arguing that really the proceedings hadn't started yet because this isn't the type of proceeding where counsel was necessary. That being a preliminary arraignment on a criminal complaint. And the Supreme Court said that you are mixing two distinct questions. The critical stage or event with whether the proceedings had initiated. And despite this having crystallized to the point of a formal plea offer, that does not turn this into formal judicial proceedings. Any more than, for example, we look at the context of, there are other things in which the stakes are high. And if we look at pre-indictment interviews of the accused versus post-indictment interviews of the accused. There are things that happen in both of those contexts that may make a formal trial ultimately nothing more than a formality. And yet the right to counsel extends only to the post-indictment interview versus pre-indictment. So, I apologize. Go ahead, I'm sorry. No, I apologize. Go ahead. Finish your thought. Well, I was getting ready to segue since I was speaking with you and answering your question. That I think actually when you first asked a question of my friend about doesn't the court's finding a fact when we get to the merits. Right. I mean, under not only the clearly erroneous standard, but when you add to that the implicit credibility finding there. That that finding by Judge Shadid is all but irreversible on appeal. That's why I, you see, I think it's hard to say that those pre-appearance exchanges, which, you know, determined what specific charges were going to be pursued, required acceptance. At that moment, the judicial proceedings commenced and exposed Mr. Miller to further charges by requiring a polygraph that could have been inculpatory. It's very hard for me to say that those were not a critical stage of the prosecution of the case. It is by all measures the equivalent of an adversary judicial process. Now, that's an issue that might be decided by the Supreme Court, as you argue. But it's a hornet's nest. And I don't know why, you know, you would care here because you have the district court's findings after the evidentiary hearing. Well, I only care as an advocate because I, as an advocate, I want to be able to forward as many good arguments as there are possible in seeking affirmance of the district judge's opinion. But if I could correct one thing, Your Honor, factually, that he went through a proffer and a polygraph, that's all under direct use immunity. And that's certainly not crystallizing a procedure, the adversarial positions of the party for purposes of the Sixth Amendment right. And I think it would be dangerous to take that into account when it is common for the government to offer direct use immunity during an investigative stage, or even during a pre-formal proceeding. And I think that's exactly why that the beginning, the commencement of the formal judiciary proceeding is not mere formalism. Because it keeps away from this fact finding that would otherwise have to occur based on differing views of just how crystallized the government's position is prior to the initiation of formal judiciary proceedings. But just getting to the merits, we're not being defensive by raising the Sixth Amendment issue. We think we're being good advocates by doing that. But on the merits, we're not defensive at all, that we believe based on the certificate of appealability which was issued. That is, whether it was a viable defense at the time of plea negotiations that these images were not lascivious. We believe we win when added to that, Judge Shadid's finding the fact that the threat of production of offenses being charged would occur if he rejected the offer. And when we look at, on page 19 of the defendant's brief, where he even admits the ambiguous lasciviousness of these thumbnail images, only four of which depicted any type of nudity. And then as Judge Scudder, you pointed out, the decision in Steen where the government came forward with substantive production charges, not attempt, and it was found to not be lascivious. You have, I think we cited a First Circuit decision where it was found lascivious under a bathroom scenario, but the court in that case said it was close case. It may not have been the wisest advice, but we're not here on judging whether this is the wisest, whether it's error-free advice, or even average advice. But whether he was afforded the counsel that is required by the Constitution, which is looking at whether he acted reasonably at the time, and based on practices and the standards of the law at that time. Back in 2012 and 2013, Judge Scudder said he was not going to make a decision based on the statute of limitations. You know, there's a debate about surreptitious recordings, and especially when they're still images. Is this going to amount to the lascivious exhibition? And it wasn't even clear from this court's precedent, in our opinion, that it was. So I think that counsel may not have given the wisest or best advice, but by examining those, by looking through the images... I just want to make sure of one thing. The finding that Judge Robner has pointed to, am I correct in hearing you say that is important to your position, though? Because the one thing that strikes me when you read these briefs where we sit, you know, you have a defense lawyer who's saying, I explained. I have experience. It's not my first rodeo. I explained the situation. This guy was in a tough spot. And then you have the defendant himself saying, I didn't really have a clue. The situation I was in here. And I really didn't appreciate this. It seems to me in a situation where you have the night and day like that, the conduct of the hearing by the district court judge, and then the finding that the district judge made after hearing the respective sides of that is quite important. And in other words, Judge Shadid found that Mr. Miller here appreciated the situation he faced. And that seems to me to be significant to your position, is it not? Well, I think we would have a problematic situation if... May I? Of course. If the government has set forth in its email saying, here's the offer, accept it. If not, we plan to charge production. If the second part of that statement had not been conveyed, I think we would be in a more difficult position. Oh, fair enough. But I understand the district judge's finding to be not only had you conveyed that as to what your charging intent was if the plea offer was rejected, but that in turn, Mr. Brown conveyed that. No, I'm sorry if I misstated, Your Honor. I meant that had Mr. Brown not conveyed that, I think we would be in a more difficult position. Oh, yeah. If Miller wouldn't have known, like, hold on, where's this mandatory minimum coming from? I didn't have a clue. Right. And the finding kind of refutes that contention, does it not? It does. I wish the finding had been more direct, but given the context in which the court had made it with the sentence of taking Brown's testimony, he testified that he fully advised his client of the possible risks. He left the decision to his client. He decided to go to trial, and then following up with that, that he provided him with enough information. I think there could have been greater clarity by the court saying that he advised him that there was these possible production charges, but I think the context makes that clear that's what the court was finding. And yes, we do believe that that is important to our position, as Judge Rovner noted initially, and as this court, Your Honor, Judge Scudder just noted. In all, I think the court can avoid the constitutional question and affirm on the merits, and we believe that he received the counsel required by the Sixth Amendment, assuming that right had attached at the time of the pre-indictment negotiations. So for these reasons, we would ask that this court affirm the decision and judgment of a district court. All right. Thank you, Mr. Walter. Thank you. Thank you, Mr. Hasbury. The case is taken under advisement and the court will stand in recess.